**DAVE GROSSMAN DESIGNS, INC., a Missouri corporation, Plaintiff,**

v.

**Jack BORTIN, Individually and as President of Harold Studios, Inc., an Illinois corporation, et al., Defendants.**

No. 71 C 1798.

United States District Court,
N. D. Illinois, E. D.

May 26, 1972.

William J. Stellman, William E. Recktenwald, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., for plaintiff.

Edward C. Threedy, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

The plaintiff has invoked the jurisdiction of this Court under Sections 1332 and 1338 of Title 28 and Section 1125 (a) of Title 15 of the United States Code in a three-pronged attack against defendants' manufacture of certain statues of children which allegedly are copies of certain statues owned by plaintiff. In Count I of its complaint, the plaintiff alleges that the defendants' statuary infringe ten copyrights held by the plaintiff. Count II of the complaint alleges that the defendants manufacture and distribute these items in violation of Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a), in that the defendants have adopted in their statuary the same types of styles, coloring, packaging and distribution as utilized by plaintiff in its manufacture, packaging and distribution of its line of statuary. Count III of the plaintiff's complaint alleges that these same actions of the defendants in adopting a trade dress for their statuary that so closely resembles that utilized by the plaintiff is a violation of the Uniform Deceptive Trade Practices Act of the State of Illinois, Ill.Rev.Stat., Ch. 121½, § 311 et seq. The defendants have moved for summary judgment on numerous grounds.

### I

The defendants' initial assault on the complaint is their argument that the first cause of action, which allegedly arises under the Copyright Act, 17 U.S.C. § 1 et seq., fails to state a claim for which relief can be granted. The defendants allege that Count I of the complaint merely charges them with copying the dominant features of the plaintiff's line of statuary in varying versions rather than copying any one of the statues in its entirety, that it fails

to set forth which of the defendants' numerous statues are copies of which of the plaintiff's numerous copyrighted statues, and that it alleges that all of the plaintiff's ten copyrights are infringed by all of the ten accused statues of the defendants. Accordingly, the defendants claim, they are entitled to summary judgment on the copyright claim.

The defendants' motion as here involved must be characterized as a motion to dismiss alleging that the complaint does not state a claim for which relief can be granted. We have read the complaint and believe that, although Count I (the copyright count) could have been more precisely articulated, it nevertheless states a cause of action. The complaint informs the defendants with the minimum particularity required by the Federal Rules of Civil Procedure that it owns ten copyrights and that the defendants are charged with violating them by the manufacture and sale of their ten accused statues. Whether or not the alleged copying of only the dominant features of plaintiff's statuary will be enough to support a finding on the merits of infringement, see Part III of this opinion, *infra,* the plaintiff does allege copying of the copyrighted works and therefore does state a cause of action under the copyright laws sufficient to withstand what is, in essence, a motion to dismiss for failure to state a claim.

## II

The defendants next move for summary judgment based upon grounds which they entitle "Originality re invalidity." They argue that the plaintiff's copyrights are invalid because the pieces that are copyrighted are not original so as to allow a valid copyright to have issued for them. They state that prior to the initial publication of the plaintiff's copyrighted statuary, the sculptress, Ann Entis, authorized several articles to be printed in the magazine CERAMICS MONTHLY in which she explained how to sculpt children's faces in a certain style (which style is alleged

to contain the dominant features of all her statues of children). Included in these magazine articles were photographs of a number of pieces of children's statuary she had finished, all of which possessed these dominant facial features, although none of these articles was published with the copyright notice required by Section 10 of the Copyright Act, 17 U.S.C. § 10. In addition, the defendants allege, statues of the sculptress Ann Entis which possess these same dominant facial characteristics (which works are not directly involved in this litigation) that likewise do not satisfy the requirements needed to obtain statutory copyright protection can be purchased in the open market. Thus, the defendants argue, the dominant facial features used by Ann Entis in her works of children are in the public domain and may not be copyrighted by the plaintiff.

That this argument is specious is apparent by even the most cursory review of copyright law. It must be noted initially that the plaintiff does not have a copyright upon the "dominant features" utilized by Ann Entis in her sculpture. Rather, they have copyrights on ten individual expressions of her motif which appear in the form of ten different statues. The only issue that is involved in determining whether the copyrights on these ten items is valid is to determine if they have met the requirement of originality required by the copyright laws.

The issue of the originality needed in a work of art to obtain a valid copyright thereon has been succinctly summarized by Judge Friendly in Puddu v. Buonamici Statuary, Inc., 450 F.2d 401 (2d Cir. 1971). In that case, as here, the sculptor of the works which were copyrighted had previously created similar statues which had not been copyrighted. The alleged infringer contended as a defense that the copyrights on the plaintiff's statuettes were invalid because no significant differences existed between those statuettes and the uncopyrighted ones the sculptor had created earlier. In reject-

ing this contention, the Court stated at 450 F.2d 402:

> Although "[t]he Copyright Act nowhere expressly invokes the requirement of originality," courts have uniformly inferred this from the constitutional and statutory condition of authorship. Nimmer, Copyright, § 10 at 32 (1971 ed.). However, originality has been considered to mean "only that the work owes its origin to the author, i. e., is independently created and not copied from other works." *Id*. § 11 at 33 (footnote omitted) . . . . While there is a strong family resemblance between the copyrighted and the uncopyrighted models, the differences suffice to satisfy the modest requirement of originality laid down by the Supreme Court in Bleistein v. Donaldson Lithographing Company, 188 U.S. 239, 250, 252 [, 23 S.Ct. 298, 47 L.Ed. 460] (1903) and by this court in Alfred Bell & Co. v. Catalda Fine Arts, Inc., 191 F.2d 99 (2d Cir. 1951), and Millworth Converting Corp. v. Slifka, 276 F.2d 443, 444–445 (2d Cir. 1960). While the district court made much of the fact that defendant's statuettes differ from the copyrighted models in minor respects, that does not carry the day for the defendant unless the differences are sufficient to negate infringement. The tests for eligibility for copyright and avoidance of infringement are not the same. *Originality sufficient for copyright protection exists if the "author" has introduced any element of novelty as contrasted with the material previously known to him.* . . . (emphasis added)

*See also*, Roth Greeting Cards v. United Card Company, 429 F.2d 1106 (9th Cir. 1970) ; Day-Brite Lighting, Inc. v. Sta-Brite Fluorescent Manufacturing Company, 308 F.2d 377 (5th Cir. 1962) ; Best Medium Publishing Company v. National Insider, Inc., 385 F.2d 384 (7th Cir. 1967), cert. denied, 390 U.S. 955, 88 S.Ct. 1052, 19 L.Ed.2d 1150 (1968) ; Scott v. WKJG, Inc., 376 F.2d 467 (7th Cir. 1967), cert. denied, 389 U.S. 832, 88 S.Ct. 101, 19 L.Ed.2d 91 (1967).

Assuming that the failure of Ann Entis to put the required copyright notice on her statuary referred to by the defendants prior to their general publication placed those works in the public domain, we nevertheless conclude that each of the ten statues covered by plaintiff's copyrights, which have been submitted to the Court in the form of photographs or actual reproductions thereof, are sufficiently different from Ann Entis' prior works so as to be original insofar as obtaining copyrights are concerned. These copyrights, therefore, are valid from this point of view. In any event, the defendants are not entitled to summary judgment on the basis of lack of originality.

The defendants' next argument is that the plaintiff produced and sold three particular statues, those identified as EN 18, EN 19 and EN 20, all of which bear the copyright notice "©DGD Inc. 1969" even though it had no assignment of copyright rights in these statues. Thus, the defendants argue, the copyright notices that were provided on these three pieces of statuary were defective in that, if no assignment of the common law copyright had been made to the plaintiff, the copyright holder, apparently Ann Entis, lost that protection when the pieces were published with a copyright notice indicating the holder to be someone other than herself. In support of their factual assertion that the plaintiff did not possess any assignment rights to the three statues, the defendants have referred the Court to certain depositions taken of the plaintiff's officers.

We note initially that the assignment of a common law copyright need not be in writing and may even arise by implication from conduct. Nimmer, Copyright, § 120.1 at 522.1 (1971 ed.). But even assuming the validity of the defendants' factual assertion that the plaintiff possessed no interest in these three statues, which assertion, incidentally, has not been responded to by the plaintiff, summary judgment would not be appropriate at this time because the courts have written into the copyright law certain protections for copyright

holders who have not dotted every "i" and crossed every "t" in relation to their copyright notices. Rather than construing § 10 of the Copyright Act so as to create copyright forfeiture, the courts have concluded that wilful infringers of a copyright who possessed actual knowledge of the existence of that copyright are in no position to assert insufficiency of notice even if that notice were indeed insufficient for some purposes. *See,* Uneeda Doll Co. v. Goldfarb Novelty Company, 373 F.2d 851, 854 (2d Cir. 1967), cert. dismissed 389 U.S. 801, 88 S.Ct. 9, 19 L.Ed.2d 56 (1967); Dan Kasoff, Inc. v. Novelty Jewelry Co., 309 F.2d 745 (2d Cir. 1962). While we do not conclude that Miss Entis' three statues did not fall into the public domain because of the publishing of her works by plaintiff allegedly without the proper copyright notice, we do conclude that it is too early in these proceedings to make that determination, particularly because the burden of proof on this issue is upon the alleged infringers, Tennessee Fabricating Company v. Moultrie Manufacturing Company, 421 F.2d 279, 282–283 (5th Cir. 1970), cert. denied, 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970).

█ Continuing with a similar argument, the defendants contend that the plaintiff has marked other of its statues, EN 101, EN 102, EN 103, EN 201 through 207, and EN 21, with the notice "©DGD Inc. 1969", whereas Dave Grossman Designs, Inc. never possessed any interest in these statuary because the assignment from Ann Entis was from her to David Grossman and Marshall Gross, as individuals. The plaintiff contends that the assignments were from Ann Entis to the plaintiff's predecessor in interest, a partnership. As we stated above, the copyright laws are not to be read so technically as to create unneeded forfeiture of otherwise valid copyrights, particularly when no party has been injured or mislead. *See, Uneeda Doll Co., supra; Dan Kasoff, Inc., supra;* Rosenthal Jewelry Corp. v. Grossbardt, 436 F.2d 315 (2d Cir. 1970); Doran v. Sunset House Distributing Corporation, 197 F.Supp. 940, 945–947 (S.D.Cal. 1961), aff'd, 304 F.2d 251 (9th Cir. 1962).

If Ann Entis in fact transferred her common law copyright claim to the plaintiff or to its predecessor prior to any publication of the statuary, the fact that the plaintiff's name was used in the copyright notice rather than Miss Entis' name is not only no grounds for summary judgment for the defendant but was entirely proper and necessary for plaintiff to obtain the statutory copyright protection after initial publication. 17 U.S.C. §§ 10, 19. As above, insufficient information is presently in the record to determine precisely when and to whom Ann Entis transferred her common law copyright rights and the precise relationship between the partnership of Marshall Gross and David Grossman with the corporate plaintiff. Accordingly, the defendants' summary judgment motion as to this claim must also be denied.

█ The defendants' final contention in support of their theory that the plaintiff's copyrighted statues are in the public domain is that the plaintiff has failed to comply with Section 32 of the Copyright Act. This section authorizes the changing of names on the copyright notice on a work after the statutory copyright has been assigned *and* properly recorded with the Copyright Office. The defendants allege that Ann Entis produced the statues with her name on the copyright notice prior to assigning her rights in the statuary to the plaintiff and that plaintiff removed her notice from the molds from which the reproductions were to be made and substituted therefor its own designation, i. e., "DGD Inc." They allege that the plaintiff's removal of the sculptress' own copyright notice and substitution of its own prior to having such assignment recorded in the Copyright Office created a defective notice which forfeited all copyrights in such statuary.

█ This argument is invalid on its face. The Copyright Act, by its own terms, does not abrogate the common law copyrights of an author. 17 U.S.C. § 2.

And the statutory copyright cannot possibly come into existence until *after* publication, i. e., at the time that the common law copyright ends. Donaldson v. Becket, 4 Burr 2408 (1774); National Comics Publications v. Fawcett Publications, 191 F.2d 594 (2d Cir. 1951); Letter Edged in Black Press, Inc. v. Public Building Commission of Chicago, 320 F.Supp. 1303 (N.D.Ill.1970). *See* 17 U.S.C. § 10. Therefore, when Ann Entis transferred her rights to the plaintiff prior to publication, there could be no statutory copyright protection because there had been no publication. Section 32 of the Copyright Act, as concerns that point in time, can have no application. The only right that she then possessed that she could have assigned was her common law copyright. Once she had made such an assignment, the plaintiff was the proprietor of the common law right of first publication and could protect its rights after publication only by complying with the statute, i. e., by publishing the work with its name on the copyright notice. Defendants' motion for summary judgment based on Section 32 of the Copyright Act must be denied because no assignment of the statutory copyright which would bring this section into play has ever occurred.

### III

■■■ The defendants next ask the Court to determine as a matter of law that their statues do not infringe the copyrights of plaintiff even assuming their validity. While no doubt exists that summary judgment may be an appropriate vehicle by which infringement or the lack thereof can be determined, the test for infringement of a copyright is of necessity so vague, Peter Pan Fabrics, Inc. v. Martin Weiner Corporation, 274 F.2d 487 (2d Cir. 1960), that many variables must be considered which often renders summary judgment inappropriate because the trier of fact must consider much more than a mere comparison of the copyrighted work against the accused work. The test becomes the factual question of whether an "ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." Puddu v. Buonamici Statuary, Inc., *supra,* quoting from *Peter Pan Fabrics, Inc., supra.* In addition to considering the scrutiny that ordinary observers will give to it, the trier of fact must also consider the uses to which the copyrighted work will be put. *See* Nimmer, Copyright, § 143.12 at 627–628. (1971 ed.). After viewing both the plaintiff's copyrighted statues and the defendants' accused statues, we conclude that the accused statues are neither so conclusively similar nor dissimilar from those of the plaintiff that the Court can determine as a matter of law that the accused statues are not substantially similar to those copyrighted by the plaintiff. Accordingly, the defendants motion for summary judgment on the ground of non-infringement as a matter of law must be denied.

Several observations are appropriate at this point. A reading of the plaintiff's briefs in relation to the instant motion suggests that it believes that it possesses valid copyrights on the general style that Ann Entis utilizes in sculpting children's faces. The defendants, on the other hand, appear to be under the impression that if they copy only a portion of the plaintiff's copyrighted works, but put that copy within a different scheme or setting, that no infringement may take place. If the parties do possess the above ideas, they are all mistaken.

■■■ The law of copyright is clear that only specific expressions of an idea may be copyrighted, that other parties may copy that idea, but that other parties may not copy that specific expression of the idea or portions thereof. For example, Picasso may be entitled to a copyright on his portrait of three women painted in his Cubist motif. Any artist, however, may paint a picture of any subject in the Cubist motif, including a portrait of three women, and not violate Picasso's copyright so long as the second artist does not *substantially copy* Picas-

so's specific expression of his idea. Similarly, the plaintiff allegedly possesses copyrights on ten statues and may prohibit the defendants from manufacturing their accused statuary if, *but only if,* the accused works are found to have crossed the vague line of demarcation that separates fragmented similarity from substantial similarity. It is the ad hoc definition of this vague line as it applies to the statuary involved in this litigation that cannot be made until a trial is had and witnesses and experts are profered.

IV

The defendants next apparently contend that the plaintiff's second and third causes of action, those allegedly arising under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a) and the Uniform Deceptive Trade Practices Act of Illinois, Ill.Rev.Stat., Ch. 121½, § 311 et. seq., do not state a cause of action and that, in any event, the claims are not meritorious even if they do state a cause of action.

In its Lanham Act claim, the plaintiff contends that its coloring, packaging, display designs, and sales brochures all have been copied by the defendants so as to create confusion among potential customers as to the origin of the goods. This, it claims, violates § 1125(a) of Title 15 of the United States Code. As several courts have held that allegations of this sort do state a claim under Section 43(a) of the Lanham Act, *see* Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405 (6th Cir. 1963); Bogene Inc. v. Whit-Mor Manufacturing Co., 253 F.Supp. 126 (S.D.N.Y.1966), it is clear that the second cause of action cannot be dismissed on its face.

The defendants also appear to be vaguely alleging that the Illinois Uniform Deceptive Practices Act is in some way unconstitutional, basing their argument upon Sears, Roebuck & Company v. Stiffel Company, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). If they are indeed making such an argument, they are in error.

In *Sears,* the Supreme Court ruled that, because of the Federal patent laws, a state may not prohibit the copying of an unpatented and uncopyrighted article or award damages for such copying. The Court specifically did say, however, that a state may require goods to be labelled or that other precautionary steps be taken to prevent the customers of the goods from being misled as to their source. 376 U.S. at 232, 84 S.Ct. 784. This protection to consumers against having goods of one manufacturer being "palmed off" as goods made by another manufacturer is exactly what § 312(1) (2) of the Uniform Deceptive Practices Act is designed to provide. *See* Clairol, Incorporated v. Andrea Dumon, Inc., 163 U.S.P.Q. 245 (Ill.Cir.Ct., 1969); Comments to § 312 (1), (2) by the National Conference of Commissioners on Uniform State Laws, and by Philip W. Tone and Thomas L. Eovaldi, S.H.A., ch. 121½, § 312, at pp. 80, 81, 86 (1972 Supp.). Accordingly, we conclude that the plaintiff's third cause of action states a claim for which relief could be granted.

Finally, the defendants allege that their trade dress is not so similar to that utilized by plaintiff as to violate the Lanham Act and the Deceptive Practices Act. In support of this contention, they have submitted copies of the boxes, tags, and brochures that each party uses to package and display their wares. As in the case of the copyright infringement claim, we believe that insufficient evidence is before the Court to make the required determination, i. e., whether the defendants' trade dress for their statuary is likely to create confusion or misunderstanding as to the source of the goods. Accordingly, the defendants' motion for summary judgment on this ground must also be denied.

An appropriate order will enter denying the defendants' motion for summary judgment.