**LA TERRAZA DE MARTI, INC., a Florida corporation, Plaintiff,**

**v.**

**KEY WEST FRAGRANCE & COSMETIC FACTORY, INC., a Florida corporation, Defendant.**

**No. 85–0983 Civ.**

United States District Court, S.D. Florida, S.D.

Aug. 26, 1985.

Elizabeth J. du Fresne, du Fresne & Bradley, P.A., Miami, Fla., for plaintiff.

Richard L. Williams, Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., for defendant.

## ORDER

NESBITT, District Judge.

THIS CASE arises out of a trademark dispute over the ownership of the mark "La-Te-Da" (the mark). The facts as alleged in the Complaint, reflect that the Plaintiff, La Terraza De Marti, Inc., is the owner and operator of a restaurant/guesthouse in Key West, Florida which has come to be known as La-Te-Da. The Defendant, Key West Fragrance & Cosmetic Factory, Inc., produces and markets colognes and perfumes. In 1983, the Defendant created a fragrance to which the name La-Te-Da was attributed. Both parties have engaged in extensive advertising of their product. Unable to reach an agreement as to the ownership and use of the mark, both parties applied to the United States Department of Commerce, Patent and Trademark Office for registration of the mark. Eventually, both the Plaintiff and the Defendant were granted a trademark. Subsequently, the Plaintiff filed the instant lawsuit alleging trademark infringement under 15 U.S.C. § 1114(1) (Count I); false designation of origin under 15 U.S.C. § 1125(a) (Count II); unfair competition/deceptive trade practice under Florida common law (Count III); and injury to business reputation and dilution of mark under Fla.Stat. § 495.141 (Count IV)[1].

The Defendant has filed a Motion to Dismiss Pursuant to Rule 12(b)(6) or in the Alternative Pursuant to Rule 56(b). The Defendant asserts that either the Plaintiff has failed to state a claim for relief as to Counts I, II and III or alternatively that summary judgment should be entered against the Plaintiff. In support of both aspects of the Motion, the Defendant claims that no likelihood of confusion exists, as a matter of law, between the goods of the Defendant and the services of the Plaintiff. Finally, the Defendant argues that The cause of action alleged in Count IV is preempted by the federal trademark law.

Turning first to the portion of the Defendant's Motion brought under Rule 12(b)(6), Fed.R.Civ.P., the Court emphasizes that the Plaintiff need only allege a short and plain statement of its claim in order to overcome the Defendant's Motion to Dismiss. *See* Rule 8(a), Fed.R.Civ.P. The statutes alleged as the basis of the Complaint provide in pertinent part as follows:

(1) Any person who shall, without the consent of the registrant—

    (a) use in commerce any reproduction, counterfeit copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

    (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

---

1. Although the Plaintiff's Complaint relies on Fla.Stat. § 495.141 to support the cause of action alleged in Count IV, the Court finds that Fla.Stat. § 495.151 is the statute which provides a cause of action for injury to business reputation and dilution of mark. Fla.Stat. § 495.141, unlike § 495.151, is limited to the protection of registered marks or names. *Safeway Stores,*

*Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1168 n. 13 (11th Cir.1982). As the Plaintiff does not allege state registration of the mark, Fla.Stat. § 495.151 would be the applicable statute. Therefore, for the purposes of this Order only, the Court will treat Count IV of the Complaint as alleging a cause of action under Fla.Stat. § 495.151.

15 U.S.C. § 1114(1). 15 U.S.C. § 1125(a) provides.

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

■ The Plaintiff has alleged in the Complaint, its ownership and the registration of the mark. The Complaint further alleges that the Defendant's use of the mark is causing confusion or mistake in the minds of the public and dilution of the quality of the Plaintiff's name resulting in irreparable injury to the Plaintiff's reputation and good will. As to the Count for false designation of origin, the Plaintiff has alleged that the use of the mark by the Defendant constitutes a false designation to the buying public that the Defendant's goods originate with the Plaintiff. The Court finds that these allegations are sufficient to state a claim for relief under 15 U.S.C. § 1114(1) and § 1125(a). *See McDonald's Corp. v. Gunvill*, 441 F.Supp. 71 (N.D.Ill.1977), *aff'd* 622 F.2d 592 (7th Cir. 1980). These same allegations also adequately support the Plaintiff's claims of unfair competition and deceptive trade practice. *Id.* Accordingly, the portion of the Defendant's Motion which asserts that Counts I, II and III of the Complaint fail to state a claim for relief is hereby DENIED.

■ The second portion of the Defendant's Motion asserts that there is no likelihood of confusion, as a matter of law, between the use of the mark by the Plaintiff and the use of the mark by the Defendant. In support of this position, the Defendant points to the difference between its own product and that of the Plaintiff and asserts that this difference is sufficient to justify the entry of summary judgment against the Plaintiff. While the Defendant correctly emphasizes the likelihood of confusion test as being determinative of a claim under 15 U.S.C. § 1114(1) and § 1125(a), *see E. Remy Martin & Co. v. Shaw-Ross International Imports, Inc.*, 756 F.2d 1525 (11th Cir.1985), it incorrectly relies on the similarity of products as the decisive factor in determining likelihood of confusion. *Id.*

The Eleventh Circuit Court of Appeals has consistently, and again within the last month, analyzed at least seven factors before making a determination as to likelihood of confusion. These factors are 1) the type of trademark; 2) the similarity of design; 3) the similarity of the product; 4) the identity of the retail outlets and the purchasers; 5) the similarity of advertising media used; 6) the defendant's intent; and 7) actual confusion. *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502 (11th Cir. 1985). The Eleventh Circuit has also stated that "in this circuit a determination of likelihood of confusion, mistake, or deception is a matter of fact." 756 F.2d at 1529.

The Court recognizes that the Defendant's position is that the facts relevant to an analysis of the likelihood of confusion are so clear as to enable the Court to determine the issue as a matter of law. However, in order to determine this issue as a matter of law, there must be no possibility of a likelihood of confusion. Taking into consideration all of the enumerated factors relevant to the issue of confusion, the Court finds that at this early stage of the proceedings, genuine issues of material fact exist. While the products do differ, the Court, without making a finding as to the likelihood of confusion, would empha-

size the similar advertising concept used by the parties, the similar attitude evoked by each product, the same era and time period which the products and services recall, the same atmosphere which surrounds each product's concept, and finally the fact that each product originates from and capitalizes upon the attitude and atmosphere of Key West. Although these similarities may not be sufficient to find a likelihood of confusion between the marks, the Court does find that at least genuine issues of material fact are raised, requiring a determination by a finder of fact. Accordingly, the portion of the Defendant's Motion which requests that summary judgment be entered in favor of the Defendant is hereby DENIED.

The Court now turns to the Defendant's final argument, i.e., that Count IV of the Complaint should be dismissed as it is preempted by federal trademark law. Essentially, the Defendant asserts that since the Plaintiff has a federally registered trademark, the state may not regulate or control the use of that mark, especially in light of the fact that federal trademark law does not recognize a cause of action for dilution of mark. Initially, the Court finds that, contrary to the Defendant's position, the federal courts have in fact recognized dilution as a cause of action. *See The Dreyfus Fund Inc. v. The Royal Bank of Canada*, 525 F.Supp. 1108 (S.D.N.Y.1981); *Scott v. Mego International, Inc.*, 519 F.Supp. 1118 (D.Minn.1981); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 358 F.Supp. 1065 (D.Nev.1973). Furthermore, many states have enacted trademark legislation, and specifically anti-dilution legislation, which the federal courts have consistently applied in conjunction with the federal trademark law. *See, e.g., Victory Pipe Craftsmen, Inc. v. Faberge, Inc.*, 582 F.Supp. 551 (N.D.Ill.1984); *The Dreyfus Fund, Inc.*, 525 F.Supp. at 1125; *McDonald's Corp.*, 441 F.Supp. at 74; *Dave Grossman Designs, Inc. v. Bortin*, 347 F.Supp. 1150 (N.D.Ill.1972). Finally, the Eleventh Circuit has applied the very statute that the Defendant asserts is preempt-

ed by federal trademark law. *See Safeway Stores, Inc.*, 675 F.2d at 1167.

The Defendant principally relies on two United States Supreme Court cases in support of its preemption theory. In *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), the Court held that the construction of a state unfair competition law by a state court which resulted in providing a remedy where the federal patent law not only specifically did not provide a remedy but specifically provided for copying, interfered with federal patent law and the federal policy regarding the protection of patents. In so holding, the Court made the following reference to trademark law:

> Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods.

*Id.* at 789 (footnote omitted). The Court's holding and statement not only fails to support the Defendant's contention but instead runs contrary to it.

■ In *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, —— U.S. ——, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), a case which did not construe either the Commerce Clause, the Supremacy Clause, or the Preemption Doctrine, the Court discussed the history of the Lanham Act and stated, strictly for purposes of introduction, the following:

> Congress enacted the Lanham Act in 1946 in order to provide national protection for trademarks used in interstate and foreign commerce. Previous federal legislation ... reflected the view that protection of trademarks was a matter of state concern and that the right to a mark depended solely on the common

law. Consequently, rights to trademarks were uncertain and subject to variation in different parts of the country. Because trademarks desirably promote competition and the maintenance of product quality, Congress determined that "a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them. Among the new protections created by the Lanham Act were the statutory provisions that allow a federally registered mark to become incontestable.

*Id.* at 661 (citations omitted). This case, construing the provisions of the trademark law relating to incontestability, does not give any indication that the Supreme Court has interpreted the federal trademark law as preempting state legislation in the area. In light of this and in light of the frequent application of state trademark legislation, anti-dilution or otherwise, in federal courts, the Defendant's Motion to Dismiss Count IV of the Complaint is hereby DENIED.

To recapitulate, the Defendant's Motion to Dismiss or for Summary Judgment is hereby DENIED. However, in light of the Plaintiff's seemingly incorrect reliance on Fla.Stat. § 495.141, rather than Fla.Stat. § 495.151, the Plaintiff shall submit a Motion to Correct the Complaint within ten (10) days of the date of the entry of this Order.

It is further ORDERED AND ADJUDGED that the Plaintiff's Motion to Substitute Exhibits be and the same is hereby GRANTED as the Defendant has expressed its agreement to this Motion.

It is further ORDERED AND ADJUDGED that the Plaintiff's Motion to Strike be and the same is hereby DENIED as the Defendant has subsequently filed a Statement of Material Facts.

Finally, it is ORDERED AND ADJUDGED that the Defendant shall file an answer to the Plaintiff's Complaint within ten (10) days of the date of the entry of this Order.